UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NILI 2011, LLC, EETBL, LLC, and
INVESTMENT REALTY SERVICES, LLC
D/B/A SBYC GARNER, LLC

Plaintiffs,

v.

THE CITY OF WARREN,

Defendant.

_____/

Case No. 15-cv-13392

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [55]**

I.      **Introduction**

This case concerns rental ordinances enacted by the City of Warren,
Michigan.   Plaintiffs NILI 2011, LLC, EETBL, LLC, and Investment Realty
Services, LLC doing business as SBYC Garner, LLC filed a Complaint on
September 28, 2015.  *See* Dkt. No. 1.  Plaintiffs assert the following claims against
the Defendant City of Warren:  violations of procedural due process (Count I);
violations of due process through ordinances that are void for vagueness (Count II);
violations of the Fourth Amendment prohibition on unreasonable searches and
seizures (Count III); assumpsit under Michigan law (Count IV); and violations based

on municipal liability and 42 U.S.C. § 1983 (Counts V and VIII).  Plaintiffs request injunctive and declaratory relief in Counts VI and VII, respectively.

Defendant filed a Motion for Summary Judgment on August 16, 2017, and this motion is fully briefed.  Dkt. No. 55.

Presently before the Court is the Defendant's Motion for Summary Judgment [55].  A hearing on this motion was held on Tuesday, November 7, 2017 at 10:00 A.M.  For the reasons that follow, the Court will GRANT IN PART and DENY IN PART Defendant's Motion for Summary Judgment [55].  The Court will GRANT Defendant's Motion on Counts II and IV, and DENY Defendant's Motion on Counts I, III, and V–VIII.

## II.    Background

The Plaintiffs are limited liability companies who own rental properties in Warren, Michigan.  Dkt. No. 1, p. 2 (Pg. ID 2).  The Defendant is the City of Warren, located in Macomb County, Michigan.  *Id.*

The City has enacted ordinances covering the maintenance of rental properties.  *Id.* at p. 3 (Pg. ID 3).  These ordinances are largely from the International Property Maintenance Code ("IPMC").[1]  Renting a property in Warren requires satisfying several requirements.  First, in applying for a rental license, rental owners must certify that they agree to "release the City of Warren, its agents, servants and

---

[1] The City contends it has been enforcing the 2009 version.  *See* Dkt. No. 55-6.

employees from any and all liability resulting from the required inspections and observations hereunder." Dkt. No. 55, p. 27 (Pg. ID 588). Next, a person must register the property with the City and obtain a certificate of compliance with the rental code. Dkt. No. 1, p. 5 (Pg. ID 5). To obtain a certificate of compliance, the rental property must pass an inspection conducted by a City housing code official. *Id.* A certificate of compliance is valid for two years. Dkt. No. 55-2, p. 7 (Pg. ID 606).

A City housing code official must personally inspect a property prior to the issuance of a certificate of compliance. Dkt. No. 60-4, pp. 5–6 (Pg. ID 1492–93). The City's procedure for gaining access to a rental property is described in Section 104.3 of the IPMC. Dkt. No. 55-6, p. 12 (Pg. ID 643). Under that section, where a premises is occupied a code official must request permission from the occupant to enter. *Id.* "If entry is refused, the code official shall have recourse to the remedies provided by law to secure entry." *Id.*

The City's code officials apply the IPMC when inspecting a rental property. Dkt. No. 1, p. at 3 (Pg. ID 3). The IPMC does not define some key terms, namely "good repair." *See* Dkt. No. 55, p. 21 (Pg. ID 582). Instead, the IPMC provides that any undefined terms "shall have ordinarily accepted meanings such as the context implies." *Id.*; *see also* Dkt. No. 55-6, p. 18 (Pg. ID 649). In some instances, the IPMC offers examples regarding the meaning of an undefined term. For example,

3

the IPMC understands the exterior of a building to be in "good repair" where that building is "structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare." Dkt. No. 55-6, p. 21 (Pg. ID 652).

The City's rental coordinator, Marilyn Tremberth, testified that City inspectors sometimes apply different, conflicting interpretations of code provisions. Dkt. No. 60-3, pp. 49–50 (Pg. ID 1354–55). Likewise, a Warren property manager observed that City inspectors subjectively administer the IPMC and sometimes require changes not mandated by the IPMC. Dkt. No. 60-4, p. 4 (Pg. ID 1491).

If a premises fails an inspection, the City sends a notice to the rental owner regarding the violation. Dkt. No. 1, pp. 8–9 (Pg. ID 8–9). The IPMC requires that certain information be included in this notice, in particular, the right to appeal and the City's ability to place a lien on a non-compliant property; the City does not include this information in its notices. Dkt. No. 55-6, p. 13 (Pg. ID 644); *see, e.g.,* Dkt. No. 60, pp. 1–7 (Pg. ID 1283–1289).

The City's failure of inspection notices do, however, notify rental owners that they have sixty days to rectify the violations. *See* Dkt. No. 60-2, p. 3 (Pg. ID 1285). Before a second inspection can occur, a rental owner must pay a $40 fee, if the interior of the premises must be re-inspected, and confirm that the violations have been cured. *Id.* If the premises fails a second inspection, the City gives the owner fifteen days to make the necessary repairs. *Id.* at p. 8 (Pg. ID 1290). The owner

4

must schedule a third inspection within fifteen days and, again, a $40 fee is imposed if the interior of the house must be inspected a third time. *Id.*

Where a rental owner fails or does not schedule a third inspection, the City immediately issues the owner a ticket. *Id.* This ticket subjects owners to fines of up to $1,000. *Id.* If a rental owner refuses to pay the fine, the owner must attend a court proceeding. *Id.* This proceeding solely concerns "why [rental owners] were unable to complete inspections within the allotted time." *Id.* Put another way, the hearing only allows rental owners to address whether they possess a certificate of compliance; it does not allow them to contest the merits of code inspectors' evaluations of a property. Dkt. No. 1, p. 16 (Pg. ID 16).

The IPMC contains a section detailing an appeal process which allows rental owners to dispute a code inspector's decisions—the City did not adopt this section, however. *Id.* at p. 8 (Pg. ID 8); *see also* Dkt. No. 55-6, p. 16 (Pg. ID 647); *see also* Dkt. No. 55-2, p. 4 (Pg. ID 603). Instead, the City simply provides this court hearing after the rental owner receives a fine for non-compliance. *See* Dkt. No. 1, p. 16 (Pg. ID 16).

## III. Legal Standard

Under Federal Rule of Civil Procedure 56(c), "summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's*

*Research Ctr.,* 155 F.3d 775, 779 (6th Cir. 1998). A court must view the facts, and draw reasonable inferences from the facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV.    Discussion

Defendant argues it is entitled to summary judgment on all of Plaintiffs' claims. Dkt. No. 55, p. 12 (Pg. ID 573). Specifically, Defendant contends there is no genuine dispute about Plaintiffs' claims regarding (1) procedural due process; (2) due process violations based on the void for vagueness doctrine; (3) prohibitions on unreasonable searches and seizures under the Fourth Amendment; (4) assumpsit under Michigan law; (5) municipal liability; and (6) 42 U.S.C. § 1983. Defendant also opposes Plaintiffs' request for injunctive and declaratory relief.

The Court agrees with the Defendant that it is entitled to summary judgment on Counts II and IV. The Court finds that the Defendant is not entitled to summary judgment on Counts I, III, and V–VIII, however.

A.    Count I:  Procedural Due Process

1.    Notice

Defendant contends there is no genuine dispute that it has provided Plaintiffs with notice that comports with procedural due process. Conversely, Plaintiffs allege that reasonable minds may disagree about whether the Defendant has violated their procedural due process rights, as the City's failed notices of inspection do not include all the information required by the City's rental regulations. The Court finds that the Plaintiffs' argument has merit.

" 'Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.' " *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). As it concerns procedural due process, "the deprivation of property by state action is not itself unconstitutional; 'what is unconstitutional is the deprivation of such an interest *without due process of law*.' " *Id.* (quoting *Christophel v. Kukulinsky*, 61 F.3d 479, 485 (6th Cir. 1995)).

The City's notices of failed inspection do not include all the information required by the City's rental code, but the City correctly notes that this failure " 'does not . . . automatically translate into a deprivation of procedural due process under the United States Constitution.' " *Shoemaker v. City of Howell*, 795 F.3d 553, 560 (6th Cir. 2015) (quoting *DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999)). Yet there is a genuine dispute about whether the City provides Plaintiffs with sufficient notice because the City does not notify Plaintiffs of an appeal process. Indeed, the City does not have an appeal process.

"[N]otice must be 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,' and 'must afford a reasonable time for those interested to make their appearance.' " *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). For example, the *Shoemaker* court concluded that a defendant city provided sufficient notice regarding an ordinance because it had communicated with the plaintiff, mailed and posted notices of violations on the plaintiff's doorstep, and the notices specified the section of the city code at issue. *Id.* at 560. The court found that a review of the ordinances or a call to the city would have answered the plaintiff's questions about the process for objecting to the alleged violations. *Id.*

Here, as Plaintiffs note, the City's notices of violation do not provide any information regarding how a renter can oppose the merits of a failed notice of inspection. *See, e.g.,* Dkt. No. 60-2, pp. 1–2 (Pg. ID 1283–84). And, a simple call to the City would not lead to answers for Plaintiffs, as it would have for the plaintiff in *Shoemaker*. Plaintiffs could not have learned of the City's appeal procedures because the City does not have appeal procedures.

To the extent the Defendant argues that the court hearing is an adequate appeal procedure, this argument lacks merit. The court hearing does not address objections to the alleged violations in the first instance; it solely assesses whether owners have a valid certification of compliance, which of course they do not, as the hearing would not otherwise be necessary. Dkt. No. 1, p. 16 (Pg. ID 16); *see also Garner Props. & Mgmt. v. Charter Twp. of Redford*, No. 15-14100, 2017 WL 3412080, at *5 (E.D. Mich. Aug. 8, 2017) (addressing constitutional challenges to the IPMC and concluding that reasonable minds may disagree whether a city provided sufficient notice of an appeal process because plaintiff "attempted to initiate the appeals process, but, in spite of its best efforts, it was unsuccessful.")

2.     Mathews Test

For a procedural due process claim, aside from notice, courts must examine whether pre- and post-deprivation procedures taken together offend the Due Process

Clause. *Shoemaker*, 795 F.3d at 559. The following considerations help courts determine if the process provided is sufficient:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation[;] . . . [3] the probable value, if any, of additional or substitute procedural safeguards; and [4] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (alteration in original) (quoting *Mathews*, 424 U.S. at 335). The requirements of due process depend on the facts of a given case, and "pre-and postdeprivation processes should be considered together as a single package." *Id.*

a)     Private Interest Affected

The initial inquiry for a procedural due process claim is "whether the plaintiffs-appellees were deprived of a constitutionally protected property right; if they were, we must then ask if the process provided was constitutionally adequate." *Kaminski*, 865 F.3d at 347 (citing *Kukulinsky*, 61 F.3d at 485). Defendant argues Plaintiffs were not deprived of a constitutionally protected property interest because in contravention of the City's housing code, Plaintiffs have not (1) registered a rental property; (2) had it inspected; or (3) obtained a certificate of occupancy. Dkt. No. 55, p. 29 (Pg. ID 590). Plaintiffs assert that they have a property interest in the money they pay from fines, which can reach $1,000 per property, and also the money

they spend on unnecessary repairs. Dkt. No. 60, pp. 30–31 (Pg. ID 1241–42). The Court agrees with the Plaintiff.

"[T]he property interest in a person's means of livelihood is one of the most significant that an individual can possess." *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 486 (6th Cir. 2014) (quoting *Ramsey v. Bd. of Educ. of Whitley Cty.*, 844 F.2d 1268, 1273 (6th Cir. 1988)). For instance, the Sixth Circuit has held that income-generating animals constitute an important property interest, although the plaintiff in *United Pet Supply* was not totally deprived of the animals because they were returned. *Id.* Likewise, in *Shoemaker*, the Sixth Circuit found that a plaintiff had a property interest in the $600 he paid in fines and costs for violations of an ordinance over a 16-month period. *Shoemaker*, 795 F.3d at 559.

Here, Plaintiffs' property interest is not "relatively minor" like that of the plaintiff in *Shoemaker*. Moreover, although these fines do not put Plaintiffs at risk of going hungry or losing their homes, each fine is $1,000, Plaintiffs cannot rent their properties until these fines are paid, and Plaintiffs must renew their rental licenses every two years. *Compare Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) (holding that a pre-deprivation hearing was necessary because the welfare benefits at issue provided the ability to secure necessities like food and clothing).

b)     Risk of Erroneous Deprivation

A risk of erroneous deprivation is generally minor where the action at issue entails "little risk of error and is non-discretionary." *Sickles v. Campbell Cty., Ky.*, 501 F.3d 726, 730–31 (6th Cir. 2007). Examples of a minor risk of deprivation include "elementary accounting" and an ordinance restricting vegetation on land to eight inches tall. *Id.*; *Shoemaker*, 795 F.3d at 561. For example, in *Garner*, a court in this district held that the IPMC posed a risk of erroneous deprivation. 2017 WL 3412080, at *7. Specifically, the court cited testimony from the defendant that the IPMC sometimes required subjective interpretation, and testimony from the defendant's building supervisor that, in practice, the IPMC was often subjectively enforced. *Id.*

The Court finds this reasoning persuasive. Similarly, here, the City's rental coordinator, Marilyn Tremberth, testified that individual inspectors sometimes reach different conclusions about the application of the IPMC. Dkt. No. 60-3, pp. 49–50 (Pg. ID 1354–55). Plaintiffs also present an affidavit from a property manager who cites specific ways that the City has subjectively applied the IPMC. Dkt. No. 60-4, p. 4 (Pg. ID 1491).

c)     Probable Value of Additional Safeguards

Defendant contends additional safeguards would provide little value because the City provides notice and an opportunity to be heard. Dkt. No. 55, pp. 32–33 (Pg.

ID 593–94). Specifically, the City argues it has already implemented sufficient safeguards through (1) providing Plaintiffs an opportunity for re-inspection once violations are identified; (2) granting Plaintiffs sixty days to make corrections; and (3) after fining Plaintiffs for a failed re-inspection, granting them a hearing. *Id.* at p. 32 (Pg. ID 593). Yet as the Plaintiffs correctly observe, the City's process does not provide an opportunity to contest the merits of code inspectors' findings. Indeed, the City describes the hearing as an opportunity "to justify why [Plaintiffs] were unable to complete inspections within the allotted time." *Id.* at p. 34 (Pg. ID 595). The hearing is not a chance to contest whether there were actual code violations on Plaintiffs' property.

The City's rental coordinator testified that the court proceeding solely concerned whether a renter has a certificate of compliance, and thus, does not address the alleged underlying violations. Dkt. No. 60-3, pp. 67–69 (Pg. ID 1372–74); *see also Garner*, 2017 WL 3412080, at *8 (concluding that Article VI, § 28 of the Michigan Constitution provides for judicial review of an administrative agency's final orders, but "[plaintiff's] inability to get a decision on appeal means that there is no 'final decision' for a court to review.").

d)      Impact of Additional Safeguards on the City

The City asserts that additional safeguards would impose a "significant" burden through "substantial costs on the City without a corresponding benefit." Dkt.

13

No. 61, p. 10 (Pg. ID 1694). The City, however, provides no insight into the processes that would be costly and why. The *Shoemaker* court found that the $600 in fines and fees imposed on the plaintiff was "sufficiently small that added procedural safeguards would quickly outpace the monies collected as a result of enforcing the City Code." *Shoemaker*, 795 F.3d at 562. Here, Plaintiffs are fined up to $1,000 for violations, however, and the City offers no evidence as to why additional safeguards would be costly. Consequently, this consideration weighs in favor of the Plaintiffs.

### 3. Prejudice

The City argues reasonable minds would all agree that Plaintiffs' properties were in violation of the code. *See, e.g.,* Dkt. No. 55, p. 17 (Pg. ID 578). The Court disagrees.

A plaintiff must dispute the charges alleged to raise a genuine dispute regarding a procedural due process claim. *See Shoemaker*, 795 F.3d at 563 (holding that "by not disputing the charges against him, [plaintiff] is precluded from mounting a procedural-due-process claim against the City, even if a due-process violation had in fact occurred." (citing *Graham v. Mukasey*, 519 F.3d 546, 549–50 (6th Cir. 2008))). For example, based on evidence that the defendant imposed standards not specified in the code, the *Garner* court found that the plaintiff raised a question of fact regarding prejudice. 2017 WL 3412080, at *9.

Similarly, here Plaintiffs present evidence that the City imposed obligations not outlined in the code. SBYC Garner, LLC, for example, contends that the code only required an electrical service of 60 Amp, but the Defendant forced it to implement a 100 Amp service. Dkt. No. 1, p. 17 (Pg. ID 17). Plaintiffs also present an affidavit from a Warren property manager who declared that if "[he] do[es] not do exactly what they demand – even if it not authorized [sic] by the IPMC – Plaintiffs and all other clients that [he] manage[s] for are faced with multiple fines, fees, penalties, potential liens against property, and potential bench warrants." Dkt. No. 60-3, p. 4 (Pg. ID 1491). Reasonable minds then may disagree about whether Plaintiffs have suffered prejudice.

Based on the above, Plaintiffs raise a genuine issue of material fact regarding whether Defendant has deprived them of procedural due process.

B.    Count II:  Void for Vagueness

Plaintiffs assert reasonable minds may disagree about whether the IPMC is unconstitutionally vague because the IPMC does not define certain terms. Dkt. No. 1, p. 12 (Pg. ID 12). Specifically, terms like "good repair" and "workmanlike manner." *Id.* According to Plaintiffs, these undefined terms provide code officials unfettered discretion in interpreting the code, thereby depriving Plaintiffs of notice. *Id.* at pp. 12–13 (Pg. ID 12–13). On the other hand, the City argues that the IPMC gives code officials sufficient guidance, for example, by establishing that undefined

terms "shall have ordinarily accepted meaning such as the context implies." Dkt. No. 55, p. 21 (Pg. ID 582). The City also contends that the IPMC provides examples of some undefined terms. *See id.* (noting that the IPMC describes good repair as a building exterior that is "structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare." (quoting Section 304.1 of the IPMC, Dkt. No. 55-6, p. 21 (Pg. ID 652))). The Court finds that the City's argument has merit.

"A statute is unconstitutionally vague if it denies fair notice of the standard of conduct for which the citizen is to be held accountable, or if it is an unrestricted delegation of power which leaves the definition of its terms to law enforcement officers." *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608–09 (6th Cir. 2005); *see also Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999) (applying same standards to ordinance). "The second prong—providing minimal guidelines to govern the conduct of law enforcement—constitutes the more important aspect of the vagueness doctrine." *Belle Maer Harbor*, 170 F.3d at 556–57. A licensing scheme with "narrow, objective, and definite standards to guide the licensing authority" does not grant city officials with "undue discretion." *American-Arab Anti-Discrimination Comm.*, 418 F.3d at 609.

A court addressing a void for vagueness challenge "must first consider whether the [ordinance] 'reaches a substantial amount of constitutionally protected

conduct.' " *U.S. v. Blaszak*, 349 F.3d 881, 887 (6th Cir. 2003) (quoting *Belle Maer Harbor*, 170 F.3d at 557). Where an ordinance reaches a substantial amount of constitutionally protected activity, a court may evaluate the ordinance for its facial validity. *Id.* (citing *Belle Maer Harbor*, 170 F.3d at 557). If an ordinance does not reach constitutionally protected activity, an ordinance will be assessed "in light of the facts of the particular case at hand." *Id.* (citing *Belle Maer Harbor*, 170 F.3d at 557).

In support of its argument that the IPMC provides sufficient notice of prohibited conduct, the Defendant cites *Mann v. Calumet City*, No. 08-cv-555, 2009 WL 395465, at *1 (N.D. Ill. Feb. 17, 2009). As did the *Garner* court, this Court also finds *Mann* persuasive. In *Mann*, the court addressed a void for vagueness challenge to the IPMC. *Id.* at *13. Relying on *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972), the *Mann* court observed that as an initial matter, due process does not require that regulations satisfy "mathematical certainty" or "meticulous specificity." 2009 WL 395465, at *14. Due process instead allows for "flexibility and reasonable breadth." *Id.* Moreover, housing safety regulations must address a myriad of conditions; thus, extremely precise housing regulations risk leaving some harmful conditions unregulated. *Id.*

The plaintiffs in *Mann*, as the Plaintiffs do here, challenged the IPMC's use of "good repair." The *Mann* court concluded that regulations using the term "good

repair" notify a tenant that a premises must be fit for ordinary, habitable use.  *Id.*  In support, the court cited two cases which held that regulations were not void for vagueness because their use of "good repair" provided notice that a premises had to be fit for ordinary, habitable use.  *See Freeman United Coal Min. Co. v. Fed. Mine Safety & Health Review Comm'n*, 108 F.3d 358, 362 (D.C. Cir. 1997); *see also People v. Sarnoff*, 302 Mich. 266, 4 N.W.2d 544, 545–46 (1942).  Additionally, the *Mann* court concluded the IPMC contains many more specific provisions than "good repair" provisions.  2009 WL 395465, at *14.

The Court finds persuasive the reasoning of the *Mann* court and the cases it relied upon.  Accordingly, the City is entitled to summary judgment on its void for vagueness claim.

C.      Count III:  Fourth Amendment

The parties contest whether reasonable minds would all agree that Section 104.3 of the IPMC is facially unconstitutional.  That section provides as follows:

> Where it is necessary to make an inspection to enforce the provisions of this code, or whenever the code official has reasonable cause to believe that there exists in a structure or upon a premises a condition in violation of this code, the code official is authorized to enter the structure or premises at reasonable times to inspect or perform the duties imposed by this code, provided that if such structure or premises is occupied the code official shall present credentials to the occupant and request entry. . . . If entry is refused, the code official shall have recourse to the remedies provided by law to secure entry.

Dkt. No. 55-6, p. 12 (Pg. ID 643) (emphasis omitted). Plaintiffs assert that this section is facially unconstitutional because it "allows Code Officials to enter rental properties for the purpose of inspection or whenever the Code Officials believe the IPMC has been violated, all without any warrant or prior showing that reasonable cause exists for the entry." Dkt. No. 1, p. 24 (Pg. ID 24). Conversely, the Defendant argues this section does not facially violate the Constitution because if an official is not granted access to a premises, the official must seek a warrant to enter. Dkt. No. 55, p. 13 (Pg. ID 574). The Court finds that reasonable jurors may disagree about whether Section 104.3 of the IPMC is facially unconstitutional given the City's immediate imposition of a fine following a refusal to grant access to a premises.

"In contrast to an as-applied challenge, which argues that a law is unconstitutional as enforced against the plaintiffs before the court, a facial challenge 'is not an attempt to invalidate the law in a discrete setting but an effort 'to leave nothing standing[.]' " *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (quoting *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc)). As a result, "[s]ustaining a facial attack to the constitutionality of a state law . . . is momentous and consequential. It is an 'exceptional remedy.' " *Id.* (quoting *Carey v. Wolnitzek*, 614 F.3d 189, 201 (6th Cir. 2010)). "Generally, the party asserting a facial challenge to a statute must establish that 'no set of circumstances exists under which [it] would be valid.' " *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 691

(6th Cir. 2014) (alteration in original) (quoting *U.S. v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)).

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause" and individuals have a right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "Based on this constitutional text, the Court has repeatedly held that 'searches conducted outside the judicial process, without prior approval by [a] judge or [a] magistrate [judge], are per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' " *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452, 192 L. Ed. 2d 435 (2015) (alteration in original) (quoting *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009)). Searches "serv[ing] a 'special need' other than conducting criminal investigations" are referred to as "administrative searches." *Id.* (quoting *Camara v. Mun. Court of City & Cty. of S.F.*, 387 U.S. 523, 534, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967)).

As the City's inspection does not involve a criminal investigation, the Supreme Court's administrative search jurisprudence governs the legality of the ordinance. Under that precedent, "[t]he Court has held that absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional,

the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Id.*

Two Supreme Court cases explain this doctrine. First, in *Camara*, the Court invalidated parts of a housing code that permitted City of San Francisco employees to enter any premises to perform any function required by the city code. 387 U.S. at 525–26. The Supreme Court reasoned that the administrative searches were a "significant intrusion[] upon the interests protected by the Fourth Amendment." *Id.* at 534. Specifically, the Court explained that:

> when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization.

*Id.* at 532. Accordingly, a precompliance procedure was necessary for this housing code to comply with the Fourth Amendment. *Id.*

Second, the Supreme Court invalidated a Los Angeles ordinance requiring hotel operators to record and provide police their guest lists, as the ordinance subjected noncompliant hotel operators to a criminal misdemeanor prior to any precompliance review. *Patel*, 135 S. Ct. at 2452. The Supreme Court observed that "[a] hotel owner who refuses to give an officer access to his or her registry can be arrested on the spot," and that "[t]he Court has held that business owners cannot reasonably be put to this kind of choice." *Id.* (citing *Camara*, 387 U.S. at 533).

Likewise, Plaintiffs who do not grant city inspectors access face an immediate fine, regardless of whether the City later obtains a warrant to enter. The City's rental coordinator, Marilyn Tremberth, testified that renters who refuse access to officials are fined immediately. Dkt. No. 60-3, pp. 116–17 (Pg. ID 1421–22). Therefore, although the plain language of Section 104.3 suggests a code official must have a warrant to enter a premises where an occupant refuses an official's entry, the City's policy of immediately imposing a fine after an occupant's refusal establishes a genuine dispute on this issue. *See, e.g., Garner*, 2017 WL 3412080, at *12–13 (concluding reasonable minds may disagree about whether this IPMC provision is facially unconstitutional).

D.     Count IV:  Assumpsit

Plaintiffs contend that, in violation of their due process rights, the City is extracting from them fees, penalties, or both. Dkt. No. 1, p. 24 (Pg. ID 24). Plaintiffs further allege that "an assumpsit action may be maintained against a municipality and/or its divisions without regard to government immunity when restitution is being sought for an illegal or inappropriate assessment that is authorized to become a lien on property." *Id.* at p. 25 (Pg. ID 25). This claim fails as a matter of law.

In 1963, "assumpsit as a form of action was abolished." *Fisher Sand & Gravel Co. v. Neal A. Sweebe, Inc.*, 494 Mich. 543, 837 N.W.2d 244, 256 (2013). Although

"the substantive remedies traditionally available under assumpsit were preserved," Plaintiffs cannot assert a claim based on assumpsit. *Id.* at 256–57.

Therefore, the City is entitled to summary judgment on this claim.

E.      Counts V–VIII:  Municipal Liability and 42 U.S.C. § 1983

Plaintiffs allege that they have a raised a genuine dispute about their municipal liability claim under 42 U.S.C. § 1983 because the City's rental inspection regime consisted of policies and customs that violated their constitutional rights.  Dkt. No. 1, p. 26 (Pg. ID 26).  Plaintiffs do not present new facts with respect to this claim, and instead incorporate their aforementioned allegations.  *See id.* at pp. 25–27 (Pg. ID 25–27).  Conversely, the City contends that Plaintiffs waived their constitutional claims because in applying for a rental license, Plaintiffs agreed to "release the City of Warren, its agents, servants and employees from any and all liability resulting from the required inspections and observations hereunder."  Dkt. No. 55, p. 27 (Pg. ID 588).  This argument is unavailing.

"A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).  The Sixth Circuit has held that:

> [a] plaintiff can make a showing of an illegal policy or custom by
> demonstrating one of the following: (1) the existence of an illegal

23

official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Id.* (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.' " *Id.* (quoting *Monell*, 436 U.S. at 694).

Based on the Court's prior analysis, Plaintiffs raise a genuine dispute regarding whether the City had a policy or custom of violating Plaintiffs' right to procedural due process and rights under the Fourth Amendment. Moreover, by signing the waiver in their application for a rental license, Plaintiffs did not relinquish these constitutional rights. It is well settled that "[t]he waiver of any constitutional right must be both knowing and voluntary." *Short v. United States*, 471 F.3d 686, 698 (6th Cir. 2006). Indeed, " '[c]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999) (quoting *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393, 57 S. Ct. 809, 81 L. Ed. 1177 (1937)). As Plaintiffs correctly argue, they did not intend to forfeit their constitutional rights by applying for a rental license. Defendant also presents no evidence in support of its argument, and thus, cannot overcome this reasonable presumption. Therefore, Plaintiffs raise a question of fact on their municipal liability and Section 1983 claims.

24

**V.    Conclusion**

For the reasons stated herein, the Court will GRANT IN PART and DENY IN PART Defendant's Motion for Summary Judgment.  The Court will GRANT Defendant's Motion for Summary Judgment on Counts II and IV and DENY Defendant's Motion for Summary Judgment on Counts I, III, and V–VIII.

IT IS SO ORDERED.

Dated:  November 14, 2017                    /s/Gershwin A. Drain
                                             GERSHWIN A. DRAIN
                                             United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 14, 2017, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk